**BAKER & HOSTETLER LLP**
Matthew C. Kane, SBN 171829
*mkane@bakerlaw.com*
Amy E. Beverlin, SBN 284745
*abeverlin@bakerlaw.com*
Kerri H. Sakaue, SBN 301043
*ksakaue@bakerlaw.com*
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025-0509
Telephone:  310.820.8800
Facsimile:   310.820.8859

**BAKER & HOSTETLER LLP**
Sylvia J. Kim, SBN 258363
*sjkim@bakerlaw.com*
Transamerica Pyramid
600 Montgomery Street, Suite 3100
San Francisco, CA 94111-2806
Telephone:  415.659.2600
Facsimile:   415.659.2601

Attorneys for Defendant
KOHL'S, INC.

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KIMBERLYN RODRIGUEZ, as an individual and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>     vs.<br><br>KOHL'S, INC., a corporation; and DOES 1 through 50, inclusive,<br><br>          Defendants. | CASE NO. **'22 CV 1079 JLS  WVG**<br><br>[San Diego County Superior Court Case No. 37-2022-00017805-CU-OE-CTL]<br><br>**DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION** |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA:**

PLEASE TAKE NOTICE that Defendant KOHL'S, INC., by and through its undersigned counsel, hereby removes the above-captioned action from the Superior Court of the State of California in and for the County of San Diego (the "State Court") to this Court on the ground of original jurisdiction based on the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), and on all other grounds for jurisdiction to the extent applicable, including traditional diversity and/or federal question. In support of its Notice of Removal, and in accordance with 28 U.S.C. § 1446, Defendant avers as follows:

## STATUS OF THE PLEADINGS AND PROCESS

1. On May 10, 2022, Plaintiff KIMBERLYN RODRIGUEZ filed a putative Class Action Complaint (the "Complaint") against Defendant in the State Court, styled as *Kimberlyn Rodriguez, as an individual and on behalf of all others similarly situated vs. Kohl's, Inc., a corporation; and Does 1 through 50, inclusive*, Case No. 37-2022-00017805-CU-OE-CTL (the "State Court Action"). A true and correct copy of the Complaint is attached hereto as **Exhibit A**.

2. Plaintiff's Complaint alleges eight (8) purported causes of action for: (1) failure to pay all minimum wages; (2) failure to pay all overtime wages; (3) failure to provide meal periods; (4) failure to provide rest periods; (5) untimely payment of wages; (6) wage statement violations; (7) waiting time penalties; and (9) violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* (the "UCL"), based on alleged violations of the California Labor Code.

3. On May 23, 2022, Defendant's registered agent for service of process was personally served with a copy of the Summons and Complaint. A true and correct copy of the Summons and Complaint, and every other process, pleading, and order served on Defendant together therewith, are attached hereto as the Exhibits identified below:

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

| Exhibit | Document |
|---------|----------|
| **A** | Complaint |
| **B** | Summons |
| **C** | Civil Case Cover Sheet |
| **D** | Notice of Case Assignment and Case Management Conference |
| **E** | Alternative Dispute Resolution (ADR) Information |

4.      Defendant is informed and believes that the following additional documents are also on file in the State Court Action, which are attached hereto as the Exhibits identified below:

| Exhibit | Document |
|---------|----------|
| **F** | Proof of Service of Summons |
| **G** | Ex Parte Application to Continue Responsive Pleading Deadline |
| **H** | Declaration of Sylvia J. Kim in Support of Ex Parte Application to Continue Responsive Pleading Deadline |
| **I** | Order Granting Ex Parte Application to Continue Responsive Pleading Deadline |

5.      Defendant is informed and believes that the aforementioned documents and exhibits constitute all of the process, pleadings, and orders on file in the State Court Action.

6.      Defendant is informed and believes that there has been no service of process upon Defendants DOES 1 through 50, which are fictitious defendants to be disregarded for the purposes of this removal.  *See* 28 U.S.C. § 1441(a).

## REMOVAL JURISDICTION – CAFA JURISDICTION

### A.   STATEMENT OF JURISDICTION

7.      Among other grounds, including traditional diversity and/or federal question jurisdiction to the extent applicable, Defendant avers that this Court has

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

original subject matter jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA").  *See* 28 U.S.C. § 1332(d)(2).

8.    CAFA grants federal district courts original jurisdiction over civil class action lawsuits filed under federal or state law in which any member of a putative class of plaintiffs is a citizen of a state different from any defendant, the matter in controversy exceeds $5 million exclusive of interest and costs, and the number of members of all proposed plaintiff classes in the aggregate is at least 100 class members. 28 U.S.C. § 1332(d).  CAFA authorizes removal of such actions under 28 U.S.C. § 1446.

9.    There is no presumption against removal under CAFA.  *See, e.g.*, *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) ("*Dart*") ("[N]o antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court.").  To the contrary, "CAFA's 'provisions should be read broadly, with a strong preference that interstate class actions should be heard in federal court if properly removed by any defendant.'" *Id.* at 554 (quoting S. Rep. No. 109-14, p. 43 (2005)).

10.    This Court has jurisdiction over this case under CAFA, and this case may be removed pursuant to 28 U.S.C. § 1441(a), because: (1) the proposed class contains more than 100 members; (2) Defendant is not a state, state official, or other governmental entity; (3) the total amount in controversy for all class members exceeds $5,000,000; and (4) there is diversity of citizenship between at least one class member (Plaintiff) and Defendant.

11.    Removal to this Court is proper because the action was filed and is pending in the Superior Court of the State of California in and for San Diego County, which is within this judicial district.  28 U.S.C. §§ 128(b), 1446(a).

12.    As set forth below, this case meets all of CAFA's requirements for removal and is timely and properly removed by the filing of this Notice.

///

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**B.    THIS ACTION IS A CLASS ACTION UNDER CAFA**

13.    Pursuant to Section 4 of CAFA, 28 U.S.C. § 1332(d)(2):

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which —
>
> > (A)    any member of a class of plaintiffs is a citizen of a State different from any defendant; ….

14.    CAFA defines a "class action" to include civil actions filed under state statutes or rules of procedure similar to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") that authorize an action to be brought by one or more representative persons as a class action.  In the Complaint, Plaintiff states that "[t]his is a class action filed for wage and hour violations of the California Labor Code."  Exh. A, ¶ 1; *see also id.*, ¶ 39 ("The named individual Plaintiff seeks class certification under California Code of Civil Procedure section 382."); *id.*, ¶¶ 39-48 ("Class Action Allegations"); *id.*, pp. 13-14 (seeking "certification of this action as a class action" and "appointment of Plaintiff as the representative of the Class").  Therefore, this action is a "class action" under CAFA.

**C.    MINIMUM DIVERSITY OF CITIZENSHIP EXISTS**

15.    Minimum diversity exists pursuant to 28 U.S.C. § 1332(d)(2)(A).

16.    **Plaintiff's Citizenship.**  The Complaint alleges that "Plaintiff … is a citizen of California over 18 years of age who worked for Defendants in California as an hourly, non-exempt employee of Defendants."  *See* Exh. A, ¶ 7; *see also id.*, ¶ 8 ("Plaintiff worked for Defendants in California …").  Moreover, Defendant is informed and believes that Plaintiff currently resides in and intends to indefinitely remain living continuously in California.  As such, Defendant is informed and believes that Plaintiff is a citizen of California for purposes of CAFA.  *See* 28 U.S.C. § 1332(a)(1) (an individual is a citizen of the state in which he or she is domiciled); *Lew v. Moss*, 797 F.2d 747, 751-52 (9th Cir. 1986) (party domiciled in state of party's address); *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) (residence is *prima*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1   *facie* evidence of domicile for purposes of determining citizenship).[1]

2   17.   **Defendant's Citizenship.**   As shown on the California Secretary of
3   State's Business Entities Search website, Defendant is a Delaware corporation that
4   maintains its corporate headquarters and principal place of business in Menomonee
5   Falls, Wisconsin.   *See* URL at https://bizfileonline.sos.ca.gov/search/business (search
6   for "Kohl's, Inc.").   At its corporate headquarters in Menomonee Falls, Wisconsin,
7   Defendant's officers direct, control and coordinate its activities and the majority of its
8   executive and administrative functions are performed there.   Thus, Defendant was not
9   and is not a citizen of the State of California, but rather was and is a citizen of the States
10  of Delaware and Wisconsin for the purpose of determining jurisdiction.   *See* 28 U.S.C.
11  § 1332(c)(1); *see also Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).

12  18.   **Doe Defendants.**   DOES 1 through 50 are fictitious defendants whose
13  citizenship is disregarded for purposes of removal.   *See* 28 U.S.C. § 1441(a).

14  19.   Accordingly, because Defendant is and was a citizen of the States of
15  Delaware and Wisconsin for the purpose of determining jurisdiction, while Plaintiff is
16  a citizen of the State of California, the minimum diversity requirement under CAFA is
17  satisfied.   *See* 28 U.S.C. § 1332(d)(2) (providing that CAFA jurisdiction exists over
18  any civil action in which "any member of a class of plaintiffs is a citizen of a State
19  different from any defendant").

20  **D.   THE AMOUNT IN CONTROVERSY EXCEEDS $5 MILLION**

21  20.   Defendant avers, based on the following calculations, that the amount in
22  controversy exceeds $5,000,000.00 only for the purpose of establishing subject matter
23  jurisdiction under CAFA.   Defendant's allegations and calculations are not admissions
24  of liability or damages with respect to any aspect of this case, or to the proper legal
25  test(s) applicable to Plaintiff's allegations, or whether a class action is proper.   *See*

26  ―――――――――――――
27  [1] *See also Mondragon v. Capital One Auto Fin.*, 776 F.3d 880, 885-86 (9th Cir.
28  2013) (holding that, in connection with removal to federal court, a person's continuing
domicile in a state establishes citizenship "unless rebutted with sufficient evidence of
change").

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*LaCrosse v. Knight Truck and Trailer Sales, LLC*, 775 F.3d 1200, 1203 (9th Cir. 2015) ("'Even when defendants have persuaded a court upon a CAFA removal that the amount in controversy exceeds $5 million, they are still free to challenge the actual amount of damages in subsequent proceedings and trial.'") (quoting *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 n.1 (9th Cir. 2015)).

21.    Consistent with Fed. R. Civ. P. 8(a), a removing defendant's notice of removal need only contain plausible allegations to demonstrate the amount in controversy.  Evidentiary submissions are ***not required*** unless and until the removing defendant's allegations are contested by the plaintiff or questioned by the Court:

> In sum, as specified in § 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.  Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation.

*Dart*, 574 U.S. at 89.  This standard applies to complaints like the Complaint in this action, which do not allege or seek a specific amount of damages:

> When plaintiffs favor state court and have prepared a complaint that does not assert the amount in controversy … the Supreme Court has said that a defendant can establish the amount in controversy by an unchallenged, plausible assertion of the amount in controversy in its notice of removal

*Ibarra*, 775 F.3d at 1197-98 (citing *Dart*).

22.    A plaintiff's complaint is a court's "first source of reference in determining the amount in controversy."  *LaCrosse*, 775 F.3d at 1202 (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938) ("*Red Cab*")).  Here, in determining the amount in controversy for purposes of removal, the ultimate inquiry is what amount is put "in controversy" by Plaintiff's Complaint—not what a court or jury might later determine to be the actual amount of damages, if any.  *See, e.g.*, *Ibarra*, 775 F.3d at 1198 n.1 (defendants "are not stipulating to damages suffered" in a removal petition, "but only estimating the damages that are *in controversy*," because "jurisdiction must be analyzed on the basis of pleadings filed at the time of removal" (emph. added)); *Red Cab*, 303 U.S. at 291 ("the status of the case as disclosed by the

complaint is controlling in the case of a removal"); *Scherer v. Equitable Life Assurance Soc'y of the United States,* 347 F.3d 394, 399 (2d Cir. 2003) (the "'amount in controversy' … for jurisdictional purposes, [is] the sum put in controversy by the plaintiff's complaint").[2]

23.     Additionally, as confirmed by the Ninth Circuit in *Chavez v. JPMorgan Chase & Co.*, "the amount in controversy is not limited to damages incurred prior to removal … [r]ather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses *all relief a court may grant on that complaint if the plaintiff is victorious*." 888 F.3d 413, 414-15, 417-18 (9th Cir. 2018). Accordingly, the amount in controversy properly includes <u>all</u> relief available to Plaintiff through the end of trial.

24.     Here, Plaintiff purports to bring this action on behalf of herself and the following putative class:

> All individuals currently or formerly employed by Defendants in the State of California as hourly non-exempt employees at Kohl's e-fulfillment centers at any time during the four-year period preceding the filing of this action and continuing through the present (the "Class" or "Class Members" and the "Class Period").

Exh. A, ¶ 39.a.  Plaintiff also seeks to represent multiple subclasses of employees, including the following (*see id.*, ¶ 40 (underlining in orig.)):

> "All Class Members who received a wage statement from Defendants at any time during the one-year period preceding the filing of this action and continuing through the present ('<u>Wage Statement Subclass</u>')." *Id.*, ¶ 40.b.

> "All Class Members who worked shifts of ten hours or more without a duty-free second meal period of at least 30 minutes, who were not paid one hour of pay at the regular rate of compensation for each of those days ('<u>Meal Period Subclass</u>')." *Id.*, ¶ 40.c.

---

[2] *See also, e.g., Wilder v. Bank of Am.*, 2014 WL 6896116, at *4 (C.D. Cal. Dec. 5, 2014) (determining amount in controversy requires the court to assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint because the ultimate inquiry is what amount is put "in controversy" by the complaint, not what a defendant will actually owe).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

"All Class Members who worked shifts of ten hours or more without being authorized or permitted an uninterrupted rest period of at least 10 minutes, who were not paid one hour at the regular rate of compensation for each of those days ('Rest Period Subclass')." *Id.*, ¶ 40.d.

25.    Plaintiff and the putative class members she seeks to represent ("PCMs") purport to seek, *inter alia*, allegedly unpaid minimum, regular, and/or overtime wages; liquidated damages in an amount equal to the allegedly unpaid minimum wages; allegedly unpaid premiums for missed, shortened, or late meal and rest breaks for shifts over 10 hours; wage statement penalties; waiting time penalties; restitution under the UCL; and "reasonable attorneys' fees" under various provisions of the California Labor Code and under Cal. Civ. Proc. Code § 1021.5. *See id.*, ¶¶ 51, 54, 58, 62, 65, 70, 73, 77 & Prayer for Relief at 13:28-14:11.

26.    CAFA authorizes the removal of class actions in which, among the other factors mentioned above, the aggregate amount in controversy for all class members exceeds five million dollars ($5,000,000.00). *See* 28 U.S.C. § 1332(d). Here, the amount in controversy based on the allegations in Plaintiff's Complaint and the claimed statutory damages, penalties, and attorneys' fees exceed that jurisdictional minimum.

### Size of Proposed Class

27.    According to the Complaint, "[t]he members of the Class are so numerous that joinder of all individuals is impracticable." Exh. A, ¶ 42. Indeed, Defendant <u>currently</u> employs more than 100 individuals as hourly-paid, non-exempt employees at its e-commerce fulfillment centers in California and has employed more than 100 individuals during the putative class period as defined in the Complaint (*i.e.*, May 10, 2018 through the date of removal). Therefore, the aggregate membership of the proposed class is *at least* 100 as required under CAFA. *See* 28 U.S.C. § 1332(d)(5)(B).

### Amount in Controversy

28.    CAFA authorizes the removal of class actions in which, among the other factors mentioned above, Defendant avers that the aggregate amount in controversy for

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

the types of damages sought for all of the PCMs exceeds $5,000,000.00, and, therefore the amount in controversy as sought in the Complaint exceeds that jurisdictional minimum. *See* 28 U.S.C. § 1332(d).

29.    The claims of the individual PCMs in a "class action" are aggregated to determine if the amount in controversy exceeds the sum or value of $5 million. *See* 28 U.S.C. §§ 1332(d)(6), (11).  In addition, Congress intended for federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (*e.g.*, damages, injunctive relief, or declaratory relief)."  Senate Judiciary Committee Report, S. Rep. 109-14, at 42.  Moreover, the Senate Judiciary Committee's Report on the final version of CAFA makes clear that any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction.[3]

30.    Defendant's payroll, employment, and operational data for those PCMs comprised of Defendant's current and former employees in California who worked as non-exempt hourly employees at its e-commerce fulfillment centers between May 10, 2018 and the date of this removal was used and analyzed to determine the CAFA amount in controversy for purposes of this Notice of Removal.[4]  Defendant's data for that four-year period can be summarized as follows:

(a)    For the defined class period from May 10, 2021 through May 10, 2022 that is purportedly applicable to the Wage Statement Subclass (the "1-

---

[3] *See* S. Rep. 109-14, at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case ... Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions.  Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

[4] If challenged, Defendant expressly reserves and does not waive its right to supplement and/or amend its removal submissions to rely on additional data and/or claims for which no calculations have yet been proffered in calculating the amount in controversy.

Year SOL Period"):

> (i) At least 3,491 PCMs were employed by Defendant at its e-commerce fulfillment centers in California; and

> (ii) They were issued a total number of 55,653 payroll checks that included payment of earned wages for actual hours worked (*i.e.*, excluding payroll checks with payment for only paid time off or similar "hours").

(b) For the defined class period from May 10, 2018 through May 10, 2022 that is purportedly applicable to the <u>Meal Period Subclass</u> and Rest Period Subclass (the "4-Year SOL Period"):

> (i) The PCMs worked an aggregate total of 101,730 workdays with shifts over ten hours ("10-Hour Workdays");

> (ii) The PCMs were paid an average effective regular rate of $16.62 per hour (aggregate non-PTO regular hourly wages paid ÷ aggregate regular hours worked).

### ***Third Cause of Action: Failure to Provide Meal Periods***

31.    Cal. Lab. Code § 512(a) provides, in pertinent part, that an employer "shall not employ an employee for a work period of more than 10 hours per day without providing the employee with a meal period of not less than 30 minutes…." Cal. Lab. Code § 226.7 provides for the recovery of "one additional hour of pay at the employee's regular rate of compensation" for each workday that a legally required meal period is not provided.

32.    In support of her Third Cause of Action for failure to provide meal period or to pay meal period premiums, Plaintiff alleges that Defendant "willfully failed in [its] affirmative obligation to consistently provide Plaintiff and [PCMs] compliant, duty-free meal periods of not less than 30 minutes beginning before the tenth hour of work in violation of Labor Code sections 226.7 and 512 and the IWC Wage Orders (the 'Meal Periods' sections of the applicable orders)." Exh. A, ¶ 56.  More specifically, Plaintiff alleges that she and the PCMs were ***never*** provided second meal periods on shifts of ten or more hours or paid premiums for such missed breaks:

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1
2
3
4

> When Plaintiff worked ten hours or more, she was not provide **any** second meal period, and she was not paid **any** meal break premium for those missed meal periods. Plaintiff and other employees were not aware of their right to a second meal break, were **never** provided a second meal break, and Plaintiff in fact **never** took a single second meal break despite working many shifts over ten hours.

5    *Id.*, ¶ 23 (emph. added). Furthermore, Plaintiff alleges that, "[w]hen Defendants did

6    not provide fully compliant meal periods, Defendants failed to pay Class Members a

7    meal period premium at the regular rate of compensation in violation of Labor Code

8    section 226.7." *Id.*, ¶ 24. Plaintiff seeks to recover on behalf of each PCM "the full

9    amount of the unpaid premiums, in addition to interest, attorneys' fees, and costs to the

10   extent permitted by law, including under Code of Civil Procedure section 1021.5" for

11   the four-year period preceding the filing of the Complaint. *Id.*, ¶¶ 40.c., 58, 75, 76.

12        33.    Given the Complaint's allegations that Plaintiff and PCMs were **never**

13   provided with second meal breaks on shifts of more than ten hours and were **never** paid

14   a meal period premium for those allegedly unprovided second meal breaks, Defendant

15   can reasonably assume that each of the PCMs will seek to recover a one-hour meal

16   period premium for *each day* they worked a second meal-break eligible shift (i.e., a

17   shift over ten hours) during the 4-Year SOL Period. Defendant's timekeeping and

18   payroll data reflect that PCMs worked at least 101,730 10-Hour Workdays during the

19   4-Year SOL Period and were paid an average effective regular hourly rate of $16.62.

20        34.    Therefore, based on the above-summarized data, Defendant calculates the

21   amount in controversy on Plaintiff's Third Cause of Action for second meal break

22   violations as follows:

23
24
25
26
27
28

| Average Regular Rate of Pay | | Total Number of Putative Break Violations | | Amount In Controversy |
|---|---|---|---|---|
| $16.62 | x | 101,730 | = | **$1,690,752.60** |

### *Fourth Cause of Action:  Failure to Provide Rest Periods*

35.    With respect to her rest break claim, Plaintiff alleges, **without qualification**, that Defendant "failed to authorize or *permit* ten-minute rest periods for every four hours of work or major fraction thereof as required by Labor Code section 226.7 and 516 and section 12 of the applicable IWC Wage Order on those shifts of 10 hours or more," *id.*, ¶ 26 (emph. in orig.), and that Defendant "did not authorize rest periods and did not afford sufficient staffing for Plaintiff and other employees to take compliant 10-minute rest periods in accordance with California law." *Id.*  She further alleges that "[l]egally compliant breaks were often precluded by Defendants' scheduling practices and lack of compliant policies and practices with respect to 10-minute rest periods on those shifts exceeding 10 hours in duration." *Id.*, ¶ 27.  As such, Plaintiff seeks to recover "one additional hour of pay at the respective regular rate of compensation for each workday that a fully compliant rest period was not provided" during the four-year period preceding the filing of the Complaint. *Id.*, ¶¶ 40.d., 61.

36.    Given the Complaint's allegations, Defendant can reasonably assume that each PCM will claim to have not been provided or paid premiums for at least *one* rest break on **each day** that they worked over ten hours during the 4-Year SOL Period.[5] Nevertheless, Defendant *conservatively* assumes for removal purposes only that PCMs

---

[5] *See, e.g., Archuleta v. Avcorp Composite Fabrication, Inc.*, 2018 WL 6382049, at *4-5 (C.D. Cal. Dec. 6, 2018) (finding use of 100% violation rate permissible where the complaint alleged a "consistent policy of violations" and "does not allege a more precise calculation" to dispute the violation rate proffered by the employer) (int. quot. omitted); *Mejia v. DHL Express (USA), Inc.*, 2015 WL 2452755, *4 (C.D. Cal. May 21, 2015) (holding that a 100% violation rate was properly utilized where the plaintiff's complaint did "not contain any allegations that suggest a 100% violate rate is an impermissible assumption"); *Coleman v. Estes Express Lines, Inc.*, 730 F.Supp.2d 1141, 1149-50 (Collins, J.), *affirmed* 631 F.3d 1010 (9th Cir. 2011) (holding that the defendant properly utilized a 100% violation rate for missed meal and rest breaks when calculating the amount in controversy for CAFA removal purposes where the plaintiff had alleged that the class members "consistently" worked without meal breaks); *Muniz v. Pilot Travel Ctrs. LLC*, 2007 WL 1302504, at *5 (E.D. Cal. Apr. 30, 2007) (100% rate appropriate where plaintiff "allege[d] no facts specific to the circumstances of her or [PCMs'] allegedly missed meal and/or rest periods" and alleged only that "they were 'not always provided lawful meal periods'").

will claim to have experienced a non-compliant rest break on **only** 60% of their 10-Hour Workdays.

37.    Therefore, based on Defendant's above-summarized data, which shows the PCMs worked at least 101,730 10-Hour Workdays during the 4-Year SOL Period, and were paid an average effective regular hourly rate of $16.62 during that time period, Defendant calculates the amount in controversy on Plaintiff's Fourth Cause of Action for rest break violations as follows:

| Average Regular Rate of Pay | | Total Number of Putative Break Violations | | Violation Rate | | Amount In Controversy |
|---|---|---|---|---|---|---|
| $16.62 | x | 101,730 | x | 60% | = | **$1,014,451.56** |

### *Sixth Cause of Action: Wage Statement Violations*

38.    Under Cal. Lab. Code § 226(e), an employee suffering injury as a result of a knowing and intentional failure by an employer to provide accurate itemized wage statements in violation of Cal. Lab. Code § 226 ("Section 226") is entitled to recover the greater of all actual damages *or* fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000) *per employee*.  This type of claimed violation is normally subject to a one-year statute of limitations.

39.    In support of her Sixth Cause of Action for "wage statement violations," Plaintiff alleges that "Defendants maintained a ***policy and practice*** of non-compliance with Labor Code section 226(a)'s statutory mandate by failing to issue or make available wage statements to [PCMs] **each** pay period that list any of the information required by Labor Code section 226."[6] Exh. A, ¶ 68 (emph. added).  Plaintiff further

---

[6] *See Mejia*, 2015 WL 2452755, at *4 ("It is not unreasonable to assume that when a company has unlawful policies and they are uniformly 'adopted and

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION

alleges, ***without qualification***, that "the wage statements issued by Defendant … fail[ed] to correctly list (1) gross wages earned each pay period, (2) total hours actually worked each pay period, (5) net wages earned, (9) all hourly rates in effect and the total number of hours worked each pay period." *Id.*, ¶ 69 (emph. added); *see also id.*, ¶¶ 30-36 (allegations regarding alleged wage statement violations).

40.   Elsewhere in the Complaint, Plaintiff alleges that "Defendants failed to pay all minimum, regular, and overtime wages to employees as a result of their ***policy and practice*** of non-neutral, illegal time rounding." *Id.*, ¶ 16 (emph. added).  She further alleges that "Defendants required Plaintiff and other employees to record the exact start and stop times for their shifts, but paid such employees not based on the times recorded, but by rounding the overall hours worked ***for each day*** to reflect increments of one quarter of an hour." *Id.*, ¶ 17 (emph. added).  Plaintiff contends that "this policy … resulted in routine under compensation and failure to pay *any* overtime hours for most days when overtime was worked." *Id.*, ¶ 18 (emph. in orig.).

41.   In the Complaint, Plaintiff also alleges that "Defendants failed to provide lawful meal periods to Plaintiff and other non-exempt employees," *id.*, ¶ 22, and maintained a "policy and practice of not paying all meal period premiums," *id.*, ¶ 25 ("Defendants' policy and practice of not paying all meal period premiums is ***a matter of common corporate policy and payroll administration*** such that it applies [to] and affected all other Class Members and are evident from the time records and time records logs …." (emph. added)).  Similarly, she alleges, ***without qualification***, that "Defendants did not authorize rest periods and did not afford sufficient staffing for Plaintiff and other employees to take compliant 10-minute rest periods in accordance with California law." *Id.*, ¶ 26.

---

maintained,' then the company may potentially violate the law in each and every situation where those policies are applied."); *see also Wheatley v. MasterBrand Cabinets, LLC*, 2019 WL 688209, at *5 (C.D. Cal. Feb. 19, 2019) ("policies tend to be uniformly applied").

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

42.    Plaintiff's wage statement violation claim is predicated on her claims for unpaid minimum and overtime wages and meal and rest break violations.  To wit, she alleges that "Defendants issued wage statements to [PCMs] … which contain several types of violations," including but not limited to wage statements that "failed to accurately state 'gross wages earned' and 'net wages earned' … as Plaintiff and [PCMs] earned regular and overtime wages, but were underpaid, and were deprived of wages and meal and rest period premiums at a lawful rate, resulting in an inaccurate itemization of gross and net wages earned on those wage statements." *Id.*, ¶¶ 30-31. She further alleges that PCMs' wage statements were inaccurate because they "list[ed] deflated hours worked," rather than "the actual hours worked by employees," "due to [rounding] and time shaving practices."  *Id.*, ¶ 32; *see also id.*, ¶ 17 (alleging that Defendant "round[ed] the overall hours worked [by PCMs] *for each day* to reflect increments of one quarter of an hour" (emph. added)).

43.    Plaintiff alleges that Defendant "knowingly and intentionally failed  in [its] affirmative obligation [to] provide accurate itemized wage statements to Plaintiff and [PCMs] in violation of Labor Code section 226(a)."  *See id.*, ¶ 67; *see also id.*, ¶ 37 ("Defendants' wage statement violations were knowing and intentional as a matter of law with respect to Plaintiff and [PCMs] ….").  Based on the foregoing, Plaintiff contends that she and other PCMs are "entitled to recover the statutory penalty of $50 *per employee* for the initial pay period in which a violation occurred and $100 *per employee* for *each* violation in a subsequent pay period, up to an aggregate penalty of $4,000 *per employee*, in addition to interest, attorneys' fees, and costs to the extent permitted by law, including under Labor Code section 226(e)."  *Id.*, ¶ 70 (emph. added).[7]

_____

[7] *See, e.g., Korn v. Polo Ralph Lauren Corp.*, 536 F.Supp.2d 1199, 1205 (E.D. Cal. 2008) ("Where a statutory maximum is specified, courts may consider the ***maximum statutory penalty available*** in determining whether the jurisdictional amount in controversy requirement is met." (emph. added)).

44.    Based on the Plaintiff's allegations, a 100% violation rate is properly applied to Plaintiff's wage statement violations claim, and courts have ***routinely*** accepted use of a 100% violation rate based on allegations similar to Plaintiff's here.[8] Indeed, like the plaintiffs in *Archuleta* and *Salcido*, Plaintiff's wage statement claim is predicated on her unpaid wages and break violations claims—which *all* rest on allegations of a common policy and practice.  Therefore, Defendant calculates the amount in controversy on Plaintiff's wage statement violations claim for the 3,491 PCMs employed by Defendant during the 1-Year SOL Period to at least **$5,390,750**, calculated as follows:

| Initial Wage Stmts. | | Penalty Rate | | Initial Penalties | | Subsequent Wage Statements | | Penalty Rate | | Subsequent Penalties |
|---|---|---|---|---|---|---|---|---|---|---|
| 3,491 | x | $50 | = | **$174,550** | | 52,162 (55,653 *less* 3,491) | x | $100 | = | **$5,216,200** |
| $174,550 + $5,216,200 = **$5,390,750 Total Penalties**[9] | | | | | | | | | | |

### ***Statutory Attorneys' Fees***

45.    Plaintiff also seeks statutory attorneys' fees under various provisions of the California Labor Code and under Cal. Civ. Proc. Code § 1021.5 in connection with the causes of action alleged in the Complaint.  *See, e.g.*, Exh. A, ¶ 77 & at 14:8-10.

---

[8] *See, e.g.*, *Ramirez v. Carefusion Resources, LLC*, 2019 WL 2897902, at *4 (S.D. Cal. July 5, 2019) (Benitez, J.) ("a 100% violation rate assumption—that every wage statement during the one-year period violated § 226—was not unreasonable"); *Nunes v. Home Depot U.S.A., Inc.*, 2019 WL 4316903, at *3 (E.D. Cal. Sept. 12, 2019) (using 100% where defendant "failed to provide an accurate statement not just as to missed … breaks, but as to 'all the requirements under Labor Code § 226,' which 'from time to time' resulted in inaccurate wage statements"); *Archuleta*, 2018 WL 6382049, at *6 ("it is reasonable to assume a [100%] violation rate given the myriad allegations about widespread [unpaid wages] and meal period violations"); *Salcido v. Evolution Fresh, Inc.*, 2016 WL 79381, *7 (C.D. Cal. Jan. 6, 2016) (100% rate "followed logically" from allegations of failure to accurately itemize all hours worked).

[9] The total penalties amount in controversy represents an average of approximately $1,544 in penalties per PCM ($5,390,750 / 3,491).

- 16 -

DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Plaintiff expressly seeks attorneys' fees in connection with her meal period, rest period, and wage statement claims. *See id.*, ¶¶ 58, 62, 70.

46.    In the Ninth Circuit, when attorneys' fees are authorized by statute, they are appropriately part of the calculation of the "amount in controversy" for purposes of removal. *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018); *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005); *see Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998) ("[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy."). Moreover, "a court ***must*** include **future** attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met." *Fritsch*, 899 F.3d at 794 (emph. added); *see also Chavez.* 888 F.3d at 414-15 ("[T]he amount in controversy is determined by the complaint operative at the time of removal and encompasses *all* relief a court may grant on that complaint if the plaintiff is victorious." (emph. added)).

47.    Where, as here, a common fund recovery is sought, the Ninth Circuit uses a benchmark rate of 25% of the total potential award as an estimate for attorneys' fees. *See*, *e.g.*, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) ("This circuit has established 25% … as a benchmark award for attorney fees."); *Glass v. UBS Fin. Servs.*, 331 F. App'x 452, 457 (9th Cir. 2009) (finding 25% of total award, rather than 25% of amount actually collected by the class, "was proper, and in line with Ninth circuit precedent").[10]    Thus, utilizing Defendant's calculation of the amount in

---

[10] *See also, e.g.*, *Hamilton v. Wal-Mart Stores Inc.*, 2017 WL 4355903, at *5-6 (C.D. Cal. Sept. 29, 2017) (CAFA wage and hour case allowing an estimated fee award of twenty-five percent of the plaintiff's damages in calculating the amount in controversy); *Gutierrez v. Stericycle, Inc.*, 2017 WL 599412, at *17 (C.D. Cal. Feb. 14, 2017) (CAFA wage and hour case noting that "it is appropriate to include in the calculation of the amount in controversy a potential fee award of 25% of the value of certain of the substantive claims."); *Fong v. Regis Corp.*, 2014 WL 26996, at *7 (N.D. Cal. Jan. 2, 2014) ("Courts in this circuit have held that, for purposes of calculating the

controversy on Plaintiff's Third, Fourth, and Sixth Causes of Action **only** and the 25% benchmark for attorneys' fees used in the Ninth Circuit, Defendant conservatively calculates the amount in controversy on Plaintiff's statutory attorneys' fees claims to be at least **$2,023,988.54** [$8,095,954.16 ($1,690,752.60 + $1,014,451.56 + $5,390,750.00) x 25%].

### ***Summary of Amount in Controversy***

48.     Based on the foregoing, and considering **only** Plaintiff's Third, Fourth, and Sixth Causes of Action and requested statutory attorneys' fees thereon, the amount in controversy on Plaintiff's Complaint is not less than **$10,119.942.70**, which exceeds the CAFA jurisdictional threshold:

| Cause of Action / Claim | Amount in Controversy |
|---|---|
| Meal Period Violations (Third Cause of Action) | $1,690,752.60 |
| Rest Period Violations (Fourth Cause of Action) | $1,014,451.56 |
| Wage Statement Violations (Sixth Cause of Action) | $5,390,750.00 |
| Statutory Attorneys' Fees | $2,023,988.54 |
| **TOTAL AMOUNT IN CONTROVERSY:** | **$10,119,942.70** |

49.     However, this calculation is underestimated as it does not account for any potential amount in controversy (or any attorneys' fees) on Plaintiff's First, Second, Fifth, Seventh or Eighth Causes of Action, which amounts are properly included but have not been included in Defendant's amount in controversy calculations for purposes of this Notice of Removal.

---

amount in controversy in a wage-and-hour class action, removing defendants can reasonably assume that plaintiffs are entitled to attorney fees valued at approximately twenty-five percent of the projected damages.").

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

50.    Defendant expressly reserves and does not waive its right to amend this Notice of Removal and/or offer evidence supporting the Court's jurisdiction over this action under CAFA or otherwise, including without limitation as to additional and/or different amounts in controversy on any or all of Plaintiff's causes of action alleged in the Complaint, and as to traditional diversity and/or federal question jurisdiction. Additionally, Defendant assumes that the proposed class is as defined by Plaintiff in the Complaint for purposes of this Notice of Removal only, but expressly reserves and does not waive its position that the proposed class definition is improper and/or cannot be certified.

51.    In addition, nothing in this Notice of Removal is intended or should be construed as any type of express or implied admission by Defendant of any fact, of the validity or merits of any of Plaintiff's claims, causes of action, or allegations, or of any liability for the same, all of which are hereby expressly denied, or as any type of express or implied waiver or limitation of Defendant's rights, claims, remedies, and defenses in connection with this action, all of which are hereby fully and expressly reserved.

## NO CAFA EXCEPTIONS APPLY

52.    CAFA contains a number of exceptions to its grant of original jurisdiction, *see* 28 U.S.C. §§ 1332(d)(3)-(5), but none of these exceptions are applicable here.

53.    The first is a discretionary exception based on the number of putative class members found in the state where the action was filed. *See* 28 U.S.C. § 1332(d)(3). However, the exception *only* applies where the "primary defendants are citizens of the State in which the action was originally filed." *See id.* Here, the action was originally filed in the Superior Court of the State of California and, as noted above, Defendant is not a citizen of California. Thus, this exception does not apply.

54.    Similarly, 28 U.S.C. § 1332(d)(4) contains two further exceptions to CAFA's grant of original jurisdiction based on the number of putative class members in the state in which the action was filed. However, these exceptions also apply *only* where all primary defendants, or at least one defendant, is a "citizen of the State in

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 19 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1  which the action was originally filed." *See* 28 U.S.C. §§ 1332(d)(4)(A)(i)(II),
2  1332(d)(4)(B).  Given that this action was originally filed in California, and Defendant
3  is not a citizen of California, these exceptions also do not apply.

4        55.    Finally, 28 U.S.C. § 1332(d)(5) presents two additional exceptions
5  applicable to actions where defendants are government entities, or in which the putative
6  class contains less than 100 members in the aggregate.  *See* 28 U.S.C. §§
7  1332(d)(5)(A)-(B).  Given that Defendant is not a governmental entity, and
8  Defendant's above-described data *alone* establishes that the putative class in fact *far*
9  *exceeds* 100 members, these exceptions also do not apply.

10  **VENUE**

11        56.    Venue lies in this Court because Plaintiff's action was filed in the Superior
12  Court of California, County of San Diego, and is thus pending in this district and
13  division.  Accordingly, Defendant is entitled to remove this action to the United States
14  District Court for the Southern District of California.  *See* 28 U.S.C. § 1441(a).

15  **TIMELINESS OF REMOVAL**

16        57.    This removal is timely under CAFA, and this case has not previously been
17  removed to federal court.  *See* 28 U.S.C. § 1446(b).

18        58.    The Ninth Circuit has held and clarified that removal is timely under
19  CAFA <u>at any time</u> so long as (1) the face of the complaint does not plainly allege all
20  elements needed for CAFA jurisdiction (including the amount in controversy), and (2)
21  plaintiffs have not served some other "paper" that concedes all elements needed for
22  CAFA jurisdiction. *See Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1125-
23  26 (9th Cir. 2013) (a removing defendant may remove "on the basis of its own
24  information, provided that it has not run afoul of either of the thirty-day deadlines" set
25  forth in 28 U.S.C. § 1446(b)(1) and (b)(3); "a defendant's subjective knowledge cannot
26  convert a non-removable action into a removable one such that the thirty-day time limit

1  of § 1446(b)(1) or (b)(3) begins to run against the defendant").[11]

2      59.    Here, the initial Complaint does not plainly allege all elements needed for

3  removal under CAFA, and Plaintiff has not served some other "paper" that concedes

4  all elements needed for such removal.  Therefore, this removal is timely pursuant to 28

5  U.S.C. § 1446(b) and Ninth Circuit authority.

6  ## NOTICE TO PLAINTIFF AND STATE COURT

7      60.    Contemporaneously with the filing of this Notice of Removal in this

8  Court, written notice of such filing will be served on Plaintiff's counsel of record as

9  reflected in the attached Certificate of Service.  *See* 28 U.S.C. § 1446(d).  In addition,

10 a copy of this Notice of Removal will be filed with the Clerk of the Superior Court of

11 the State of California in and for the County of San Diego.  *See id.*

12     **WHEREFORE**, Defendant respectfully requests that the above-captioned

13 action now pending in the State Court be removed to this United States District Court.

14
15 Dated:   July 22, 2022        **BAKER & HOSTETLER LLP**

16                    By:  */s/ Matthew C. Kane*
17                       Matthew C. Kane, Esq.
18                       Sylvia J. Kim, Esq.
                       Amy E. Beverlin, Esq.
19                       Kerri H. Sakaue, Esq.

20                    Attorneys for Defendant KOHL'S, INC.

21
22

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

---

23  [11] *See also Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1238 (9th Cir. 2014)
24  (reaffirming *Roth*) ("We also recently held in *Roth v. CHA Hollywood Med. Ctr., L.P.*,
    that the two 30-day periods are not the exclusive periods for removal…. In other words,
25  as long as the complaint or 'an amended pleading, motion, order or other paper' does
    not reveal that the case is removable, the 30-day time period never starts to run and the
26  defendant may remove at any time."); *Taylor v. Cox Commc'ns California, LLC*, 673
    F. App'x 734, 735 (9th Cir. 2016) ("We also hold that Defendants' second Notice of
27  Removal was timely. 'A CAFA case may be removed [by a defendant] at any time,
    provided that neither of the two thirty-day periods under § 1446(b)(1) and (b)(3) has
28  been triggered.'").

1

## **PROOF OF SERVICE**

2

3
I am employed in Los Angeles County, California.  I am over the age of eighteen years and not a party to the within-entitled action.  My business address is 11601 Wilshire Boulevard, Suite 1400, Los Angeles, CA  90025.

4

5
On July 22, 2022, I served a copy of the within document(s):  **DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION** on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes addressed as follows:

| | |
|---|---|
| Nicholas J. Ferraro<br>Lauren N. Vega<br>FERRARO VEGA EMPLOYMENT LAWYERS, INC.<br>3160 Camino del Rio South, Suite 308<br>San Diego, CA 92108<br>Tel:  619.693.7727; Fax:  619.350.6855<br>Email:  nick@ferrarovega.com<br>        lauren@ferrarovega.com<br><br>Rick A. Waltman<br>RICK WALTMAN LAW, APC<br>501 W. Broadway, Suite 800<br>San Diego, CA 92101<br>Tel:  619.320.5666<br>Email:  rick@rickwaltmanlaw.com | Attorneys for Plaintiff<br>KIMBERLYN RODRIGUEZ |

6

7

8

9

10

11

12

13

14

15
☒    **BY MAIL:**  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing with the United States Postal Service. Under that practice, it would be deposited with the United States Postal Service that same day in the ordinary course of business.  Such envelope(s) were placed for collection and mailing with postage thereon fully prepaid at San Francisco, CA, on that same day following ordinary business practices. (C.C.P. § 1013 (a) and 1013a(3))

16

17

18

19
I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

20
Executed on July 22, 2022, at Los Angeles, CA.

21

22
/s/ *Vaneta D. Birtha*

Vaneta D. Birtha

23

24

25

26

27

28

BAKER & HOSTETLER LLP<br>ATTORNEYS AT LAW<br>LOS ANGELES